with permission of the court. And I want to echo what a previous lawyer said. We appreciate the opportunity to do it in this fashion during the pandemic. I'm going to be brief in my argument because we, both of us, the appellant and the appellee, in my opinion, have done an adequate job in presenting the facts and the arguments in the law. And I would ask the court to allow me to incorporate my written readings and documents and what I've said in the brief in my oral presentation. There are two things that strike me about this case. One is summary judgment. And I go back to my beginning as a lawyer in 1965 and look at the history of summary judgments. And for a long time, federal judges, when I started practicing, would not grant summary judgment. Then we had a trifecta by the U.S. Supreme Court, and they started encouraging judges to grant summary judgment. But we still have the basic rules, and they're cited in our brief. If there are any factual issues, then summary judgment is not appropriate. We think there are factual issues on a number of issues, and therefore, summary judgment is not appropriate. Then the second thing I want to emphasize is this is a situation where Ace got knowledge of the lawsuit when it was filed, participated with the lawyer for Pine Bluff School District, Cody Keyes, knew about it, didn't do anything for almost a year. Then they were talking about trying to have a mediation. Then ultimately, they had a denial letter, and they said, we're not going to do anything. But in the meantime, Ace hired their own lawyer, Mr. Eddings, with the Friday Law Firm. Mr. Eddings is a very fine lawyer. They hired him on their own. That was confirmed by Whit Kelly, the 30P6 witness. And so we have in this situation not a place where they didn't do anything and insisted that there's no coverage from the beginning. They actively were involved, hired a lawyer, then properly performed their responsibility on the policy. We respectfully believe they did not. We've argued a number of things in terms of ambiguity. The provision relied upon is under the limits of liability section of the policy, not definitions or exclusion. They have not set it out so as to make the policyholder aware of what they're invoking in this time, which is that the EOC claim and the lawsuit are one for time purposes, and therefore they didn't have any liability either on the 2015 or the 2016 policy. This is not a situation where you have either or. You've got two policies covering the time period that's involved, and then yet they argued, well, we don't have any responsibility for any of this. We've cited waiver and estoppel. We think there are fact issues in that regard. We have an affidavit from Kyan Eddings that we think is confirmed by Mr. Kelly in his 30P6 testimony that they hired Mr. Eddings, didn't pay him. They did other things that participated that we think create a fact question as to whether or not there should be coverage under these circumstances. Counsel, isn't it... I'm sorry, Chief. Well, I was just going to ask, as I read the case, it seemed a central issue in the case was the connection between the initial administrative complaint of the complainant and the eventual lawsuit that was filed and the fact that they're essentially the very same facts that they seem to meet the requirement of the policies or at least the conditions in the policy that when you have events that are so intertwined that your attempt to ignore the initial complaint and then seek to have coverage for the second creates problems for the school district. Would you address that and why the court's analysis that these two things are intertwined essentially without the ability to separate apply in this case? Judge Smith, if you look at the record, you'll see that they filed a discrimination charge on December 1, 2015. Then we received it. I'm talking about September of 2016. And I believe the initial charge was not sufficient in detail to have the same substance of what they did in their complaint. And we've addressed that, I believe, in our briefing. We just think that there's no equality there that invokes that coverage. But even if we do, we come back to the ambiguity argument we made about this location relying upon limits of liability language so as to make it a single event to require coverage notification. So I just respectfully disagree that I don't think the facts would support inequality and therefore trigger the time that we're supposed to have presented a claim. Thank you. Judge Koumoulis? Yeah, if I could ask a question, counsel. Assuming we don't go with you on your first argument and we get to waiver and estoppel here, aren't you essentially trying to extend coverage through a waiver and estoppel argument here? In my read of the relevant cases, and I'm citing the J. McDaniel Construction County case, is that neither theory is allowed under Arkansas law to expand coverage. And would you address whether that's what you're doing here or am I misreading that case? Well, I think as we said in our brief, Judge, and we don't believe that we're expanding coverage. We're saying they can't invoke these provisions because of estoppel and waiver, and therefore it's not an extension of coverage, but it's simply prohibiting them from taking a position after all of these events have gone through here where they hired their own lawyer, participating in discussion about trial strategy. I think our position is that it's not an extension of coverage. It's simply keeping them from invoking this provision that they're attempting to do. And so it's waiver and estoppel are planned from the very beginning in our case. We've argued it to the district court unsuccessfully, but we think that it's a fact question whether or not waiver and estoppel would be applicable in this case. And if that's the situation, then that keeps them from invoking this onerous provision so as to keep us from having the benefits of the policy. I hope and trust I've answered your question. You have. Thank you. I'll stand on the record in our briefing and reserve whatever time I have for rebuttal, if any. Thank you, Mr. Hodges. Mr. Whitehead. Good morning, Justices. Thank you for giving me the privilege, allowing me the privilege to appear before you remotely, especially from Alabama. This is my first Eighth Circuit argument, and I appreciate the privilege. I represent an American insurance company in this case. We believe that the district court properly granted summary judgment. We believe that Judge Baker did a very, very diligent job in going through the record, the undisputed facts that were submitted by the parties, applying those facts to the policy, and making a determination of no coverage. This is what the claims made in reported policies have been around for quite some time. The last three decades or so, the law is fairly well developed that the claims made in reported policies are different from the occurrence policies in terms of notice because there's no prejudice rule that applies in reporting a claim under a claims made in reported policy. It's a condition of coverage. It's part of the insuring agreement. As the policies developed and evolved over the years, particularly in the case of EEOC charges, the policies are structured so that if a carrier consecutively issues policies like Ace did here for multiple years, each policy stands on its own, and the claim must be first made against the insured and reported to the insurance company during the policy period. As the policies evolved, this policy you'll see, Justice, includes also a grace period. It has a 60-day grace period if the insured non-renews whereby they can still report claims during that 60 days if they non-renew or if the carrier cancels. Initially, there were some policies that didn't contain the 60-day reporting when you had a renewal like we have here. The courts addressed those and found that in the past, there could be some sort of ambiguity, but the carriers of all like Ace now included in a renewal situation a 60-day grace period. The claim in question was the first policy, the 2015 policy, incepted in April and went out of force in February 1. The 60-day grace period for reporting a claim under that policy, therefore, ended on April 1. The 2016 policy incepted where the first left off in February 1, 2016. This claim is defined in the policy to include several things, but most pertinent here are a lawsuit, which is defined to be service when the insured actually serves service of the lawsuit. In the case of an administrative charge, it specifically defines claim to include EEOC charge, which the policy defines as the commencement of the charge by, in the words in front of me, but essentially, it's treated as when the insured receives receipt of the EEOC charge. Counsel, is it your position that if you had received notice on the EEOC claim that that would have triggered a duty to defend and you would have put counsel to work defending against that charge? If I understand the question, Your Honor, if the EEOC charge had been reported to ACE prior to April 1 of 2016, the charge was filed in December 1 and received, we know by the insured received it because they filed responses in late January of 2016. The answer is yes. All the way up until April 1 of 2016, had the claim been reported to ACE, ACE would have stepped in to handle the claim. The policy does have a duty to defend, Your Honor, but the policy also has a $25,000 retention that is borne by the insured and the insured is allowed to retain their own counsel to defend pursuant to an endorsement in policy, which is what they did here. To answer your question, yes, ACE would have accepted the claim as covered had they received notice of the EEOC charge prior to April 1, 2016. Does that answer your question? Yes. When the subsequent lawsuit arrived and came, what did your company do to connect that to the prior charge to come up with the conclusion that neither of these were covered under your policies? First of all, Your Honor, I don't think it's disputed and I don't think it was by the claimant at the trial court that the charge and the lawsuit are related. They're both based on alleged sexual harassment of Ms. Alexander by Principal Nelums and they enumerate certain counts of sexual harassment, which she then filed a grievance and thus referenced in the complaint and the EEOC charge, which she feels resulted in a claim of retaliation. There's clearly a causal connection and ACE American was able to connect those dots upon receipt. The complaint itself refers to the EEOC charge as the predecessor to that claim. When ACE got the complaint, it immediately acknowledged the claim and requested that the was the date. The complaint did not reference the date of the EEOC charge. I do not believe. They wanted to see the charge itself, but they also wanted to see what the insured received and how they responded to verify that the insured school district actually did receive it. There are cases where EEOC charges and notices are filed, but the insured doesn't receive them for some period of time, if they get hung up in the mail or whatever. ACE was looking to answer your question. They requested that information and five days later, they wrote a reservation of rights letter preserving all rights, including the right to deny defense and indemnity upon receipt of the EEOC materials. That's then where the disconnect, I guess, occurred. My client never received those materials and so the claim started proceeding with the insured defending itself within its $25,000 deductible. There wasn't then another request that came for the EEOC materials until November when the defense report was written by defense counsel and ACE had been notified finally right before that time that the $25,000 had finally been exhausted. So then there was a mediation coming up and they requested the information again to verify coverage because they had not received it from the insured. So does that answer your question, your honor, as to what they did to try to connect the two? Yes. Counsel, while we're at a break, most of these claims made policies I've seen require written notice. Does yours end up, I just have the words of the naked clause, does it require written notice or just any kind of notice? Report is what I'm talking about. Yeah, I believe it does, your honor, but I'm not able to put my hands on vision as to written notice. I do know here it's undisputed that we didn't receive the notice until it was filed and that's been established through the discovery. We can figure it out. Most of them are, but yours doesn't have it, right? Most of them say reported in writing or reported something like that. And yours doesn't say that in the very clause we're looking at. I'd have to look, your honor. It might be an endorsement, but what they do nowadays is they allow them to be reported by email. And so that's, I think there may be an endorsement to that effect. Thank you. So the case, counsel is correct. I mean, the case did move along with the insurer representing itself for a period of several months. The record that is before the court will reflect that even though counsel says that Ace was directing the defense, it was very, very limited communication. And when there was communication, Ace, the adjuster simply would say, are you guys looking at going to a mediation? Are you looking to try to resolve the case early? That sort of thing. And ultimately it's not until October of 17 that they realized that the $25,000 has been exhausted and they want to go to mediation and they're looking for contribution when Ace has to, again, request the information to satisfy that the money insured received the claim. Those communications began again in November of 2017 and it still took approximately two months for the insurer to finally get all the documentation to Ace to make the determination as when the insurer had received. And of course, Ace's position is we need to do that to verify the coverage. The insured was in command of those documents and could have provided them from the outset, but did not. With respect to the issue about Ace retaining counsel, Mr. Eddington was recommended by the insured because of conflict of an interest. And so Ace did not retain or assign counsel to represent principal Nellam, but consented to the insured allowing that separate representation based on the conflict of interest. Our position, Your Honor, is that the case law is very, very, very clear on things made and reported policies with what's called a single claim provision. And the single claim provision deems that if the claims are interrelated that it is deemed first made, which is part of the insuring agreement requirement at the time of the such claim, which in this case would be the EEOC charge. Mr. Hodges is correct that the provision does address in that situation whether there's going to be a single limit or a single deductible. But to say that you could write out the language of the single claim provision that says that the insured is deemed first made on the date of the earliest such claim, the words regardless of whether it's made before or during the policy, that phrase would be completely meaningless if the interpretation were that the single claim provision only applied to limits and only applied to deductibles amounts. So with that, we think the facts are clear. Every case that you look at on these issues, and there are multiple cases we cited around the country, have all interpreted an EEOC claim and a subsequent lawsuit as related claims. Numerous courts have treated those as a single act that is first made when the EEOC charge is made. Virtually every case on the issue is resolved at the summary judgment stage when the facts are not disputed about when the claim was first made. There is understandably and regrettably several months to a year period of time that went by, but because the insured had its own counsel and we do not believe was directing the defense, I don't think prejudice is not relevant, but there certainly wasn't prejudice regardless. We don't believe that particularly in a claims made and reported policy, it's like a question of jurisdiction. It can never be waived. You can't create coverage. This is an insuring agreement issue, not a forfeiture provision like late failure of cooperation or some other condition. This is a part of the insuring agreement which cannot create coverage by waiver. Coverage never existed. Unless there are any more questions now, I will reserve the remaining time, your honor. All right. Thank you, Mr. Whitehead. Mr. Hodges, do you have a rebuttal? Yes, your honor, just briefly and that is that you look at Whit Kelly's deposition that we took in this case where he admitted that they hired and retained Mr. Eddings. We have his affidavit that he was hired by Ace, not by Pine Bluff School District and the fact that they had not paid him, that's a fact and we go back and I agree with the judge that said, well, we can't extend coverage under Arkansas law and we're not attempting to do that. We say we got two elements, waiver and estoppel and there are fact questions as to whether or not those would be applicable here and if that's the case, summary judgment on those issues at least are not appropriate and we should have a reversal. We believe that they and one other point I want to make is in response to a question whether or not he would, Ace would have come in when they had the notice of the EEOC charge. I'm not a lawyer that's handled a lot of these cases at the EEOC level so I don't know whether or not that's the policy of an insurance company but it's hard for me to believe and understand that they would have come and defended the EEOC charge before a lawsuit was filed and so if you look at the record, you'll see that Ace had all of the information from the very beginning with the lawsuit and then they waited this disproportionate period of time without giving any notice to Pinebrook School District and therefore we believe fact questions exist at the waiver and estoppel. Thank you, your honor. Thank you, Mr. Hodges. Thank you also, Mr. Whitehead. We appreciate both counsel's participation in this morning's proceeding. We appreciate the briefing that you've provided the court and the argument this morning and we'll take the case under advisement.